UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ERIC EGGELSTON,

         Plaintiff,         Case No. 16-cv-13368

v.         Honorable Thomas L. Ludington

NEXTEER AUTOMOTIVE CORP., et al.,

         Defendants.
_____/

**OPINION AND ORDER GRANTING MOTION TO DISMISS
AND DISMISSING COUNTS FIVE AND SIX OF PLAINTIFF'S COMPLAINT**

On September 16, 2016 Plaintiff Eric Eggelston initiated the above-captioned action by filing his complaint against his former employer, Defendant Nexteer Automotive Corporation, and his former local union, United Automobile Aerospace and Agricultural Implement Workers of America, Local 699 ("Local 699" or "the Union"). In his complaint Plaintiff alleges that Defendant Nexteer wrongfully terminated him from his A-bucket position in retaliation for his exercise of his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq*, because of his race in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1), the Michigan's Elliott-Larsen Civil Rights Act ("ELCRA"), M.C.L. 37.2202, and in retaliation for opposing a violation of ELCRA in violation of MCL 37.201(a). Plaintiff also alleges that, in failing to properly represent him because of his race, Defendant Local 699 violated ELCRA's prohibitions of race discrimination and retaliation for opposing a violation of the act.

On November 3, 2016 Defendant Local 699 filed a motion to dismiss Plaintiff's claims against it pursuant to Federal Rule of Civil Procedure 12(b)(6). *See* Mot. Dismiss, ECF No. 6. Defendant Local 699 argues that Plaintiff's ELCRA claims are completely preempted by Section

301 of the Labor Management Relations Act, or, in the alternative, completely preempted by federal labor law requiring a union to fairly represent its members. Defendant Local 699 further argues that Plaintiff failed to exhaust his administrative remedies, and that his preempted claims therefore must be dismissed. For the reasons stated below, Defendant Local 699's motion will be granted.

**I.**

Plaintiff Eric Eggelston is a resident of Saginaw County, Michigan. *See* Compl. ¶ 1. On or about July 1, 2010, Plaintiff was hired as an assemblyman by Defendant Nexteer, a corporation domiciled in Delaware and operating a facility in Saginaw, Michigan. *Id*. at ¶¶ 2, 6. As a result of his employment with Nexteer, Plaintiff became a member of Local 699, a labor organization domiciled in the state of Michigan. *Id*. at ¶¶ 3, 7. Local 699 is a local chapter of the International United Automobile Aerospace and Agricultural Implement Workers of America ("UAW"). He was therefore party to a Collective Bargaining Agreement ("CBA") between Defendant Nexteer and Defendant Local 699.

**A.**

Early into his employment, Plaintiff observed that Local 699 officials were not adequately representing African-American members in filing grievances. *Id*. at ¶ 8. Plaintiff therefore began assisting African-American employees in filing appeals. *Id*. at ¶ 9. On one occasion spanning from late 2010 to early 2011, Plaintiff successfully assisted a man named Larease Williamson in appealing a wrongful discharge. *Id*. at ¶¶ 10-12.

Following Mr. Williamson's return to work, on March 30, 2011 Plaintiff alleges that he was assaulted by a Local 699 elected Committeeman named Joe Laurn, who allegedly threatened to retaliate against Plaintiff for providing assistance to union members with their appeals. *Id*. at ¶

13. Despite Plaintiff's complaints to Nexteer's Human Resources department, no action was taken. *Id*. at ¶ 14. Plaintiff's attempt to obtain a personal protection order against Mr. Laurn from the court was also unsuccessful. *Id*. at ¶ 15. Finally, on January 6, 2012 Plaintiff wrote a letter to the International President of UAW regarding the March 30, 2011 assault incident and alleging that Defendant Nexteer had a practice of discriminating against Plaintiff and others on the basis of race. *Id*. at ¶ 15.

Less than two weeks after Plaintiff sent the letter, on January 18, 2012, Defendant Nexteer suspended Plaintiff for the balance of his shift and for two weeks based on an accusation that Plaintiff had stopped the assembly line. *Id*. at ¶ 17. That same day Plaintiff grieved the discipline through the Union, alleging that Defendant had not followed the progressive disciplinary provisions of the CBA. *Id*. at ¶ 18. On March 27, 2012 Plaintiff's grievance was settled, his discipline was reduced, and he was paid for time missed. *Id*. at ¶ 21.

Plaintiff's issues with Defendants continued through the 2012 calendar year. On or about April 2, 2012 Plaintiff's supervisor, Shannon Decker, issued Plaintiff a discipline of a suspension for the balance of his shift and 30 days. *Id*. at ¶ 26.[1] However, after serving only two days of the suspension Plaintiff was returned to work and provided pay for the two days served. *Id*. at ¶ 27. Then, on May 23, 2012 Ms. Decker issued Plaintiff a notice of discipline for unexcused absences from May 16 to May 18, 2012. *Id*. at ¶ 22. Plaintiff alleges that in March of 2012 he had requested vacation time from May 14 to May 18, 2012, which had been approved by Ms. Decker. Plaintiff further alleges that Ms. Decker had altered his request, changing the "8" of May 18 to a "5", and then writing "2-days" next to the request. *Id*. at ¶ 24. In response Plaintiff filed two grievances. In the first, filed on May 24, 2012, Plaintiff demanded the removal of the

---

[1] Plaintiff has not provided the Court with the basis of this disciplinary action.

attendance points assessed against him. *Id.* at ¶ 27. In the second, filed on May 25, 2012, Plaintiff alleged that by altering his time off request Ms. Decker had harassed him. *Id.* at ¶ 29.

In July of 2012, Plaintiff was promoted from an assemblyman to an "A-bucket position." *Id.* at ¶ 30. He therefore began reporting to Sean Higgins. *Id.*

**B.**

Almost two years later, on or about March 14, 2014 Plaintiff requested time off pursuant to the FMLA for sleep apnea. Compl. ¶ 31. Plaintiff was provided with forms on March 17, 2014, which he completed and returned to Defendant Nexteer on March 27, 2014. *Id.* at ¶¶ 32-33. On April 7, 2014 Plaintiff was notified by Denny Getgood, a human resources representative, that his request was not approved. *Id.* at ¶ 34. That same day, Plaintiff's Union representative, Robert Essennacher, sent Mr. Getgood an email informing him that Plaintiff did not receive sufficient notice as to why his FMLA request was being denied. *Id.* at ¶ 37. Mr. Getgood responded that Plaintiff's request was being denied because Plaintiff's condition had not required any hospital visits or overnight stays.[2] Plaintiff alleges that Mr. Getgood was incorrect because he had spent two overnights at a hospital in order to undergo sleep studies. *Id.* at ¶ 39.

In response to the denial, on April 10, 2014 Plaintiff requested that his Local 699 representative call the Civil & Human Rights committee to file a racial discrimination complaint against Mr. Getgood. *Id.* at ¶ 40. Plaintiff also informed Mr. Getgood of his desire to file a racial discrimination complaint against him. *Id.* at ¶ 41. Plaintiff followed up with Local 699 on

---

[2] By its terms, the FMLA only covers "serious health conditions"; minor illnesses, on the other hand, are not covered by the FMLA and should be addressed through employers' sick leave policies. *See Brannon v. OshKosh B'Gosh, Inc.*, 897 F. Supp. 1028, 1035-36 (M.D. Tenn. 1995). A serious health condition is defined as "an illness, injury, impairment, or physical or mental condition" that involves either (1) "inpatient care (i.e., an overnight stay) in a hospital, hospice, or residential care facility" or (2) "continuing treatment by a health care provider." 29 U.S.C. § 2611(11)(B).

January 27, 2015 again requesting that his representative file a civil rights complaint on his behalf, but the representative did not do so. *Id*. at ¶ 43.

## C.

On September 4, 2015 Mr. Goodwin terminated Plaintiff's employment, claiming that Plaintiff had taken a sandwich from Nexteer's food market without paying for it. *Id*. at ¶ 45. Plaintiff contended that he did not steal anything, but instead had simply substituted an expired sandwich with an unexpired sandwich in accordance with market procedures. *Id*. at ¶ 46-49. Despite the fact that Defendant Nexteer and Defendant Local 699 had previously agreed to return two Caucasian employees to work after stealing from the market, Defendants did not reach an agreement to return Plaintiff to work. *Id*. at ¶ 51.

Plaintiff obtained a right to sue letter from the Equal Employment Opportunity Commission on June 21, 2016. *See* Compl. Ex. A. Plaintiff then initiated the present action against Defendants on September 16, 2016, asserting the following six counts: (1) Race discrimination in violation of Title VII of the Civil Rights Act of 1964 by Defendant Nexteer; (2) Retaliation in violation of the FMLA by Defendant Nexteer; (3) Race discrimination in violation of ELCRA by Defendant Nexteer; (4) Retaliation in violation of ELCRA by Defendant Nexteer; (5) Race discrimination in violation of ELCRA by Defendant Local 699; and (6) Retaliation in violation of ELCRA by Defendant Local 699. *See* ECF No. 1.

## II.

Defendant Local 699 now moves to dismiss Plaintiff's claims against it for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). A pleading fails to state a claim under Rule 12(b)(6) if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009). In

considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert*, 517 F.3d at 439. The pleader need not have provided "detailed factual allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" and "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678-79 (quotations and citation omitted).

**A.**

In its motion to dismiss, Defendant Local 699 argues that Plaintiff's race discrimination and retaliation claims under ELCRA are completely preempted by the Section 301 of the LMRA, or, in the alternative, preempted by the Union's duty of fair representation. These are distinct legal doctrines.

"Section 301 generally governs suits for violations of contracts between an employer and a labor organization." *In re Glass, Molders, Pottery, Plastics & Allied Workers Int'l Union, Local No. 173*, 983 F.2d 725, 728 (6th Cir. 1993). Relevantly, 29 U.S.C. § 185(a) provides:

> "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

*Id.* The Supreme Court has interpreted this statute as a complete preemption statute, holding that "when the heart of the state-law complaint is a clause in the collective bargaining agreement, that complaint arises under federal law." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)

(quotations, citations, and alterations omitted). In other words, "[t]he pre-emptive force of § 301 is so powerful as to displace entirely any state cause of action 'for violation of contracts between an employer and a labor organization.'" *Id*. (quoting *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1 (1983)). Section 301 preemption applies whenever a state rule "purports to define the meaning or scope of a term" in a collective bargaining agreement." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 210 (1985)

"Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims substantially dependent on analysis of a collective-bargaining agreement." *Caterpillar*, 482 U.S. at 394 (quotations and citations omitted). In determining whether complete preemption applies, this Court must determine (1) whether proof of Plaintiff's claims requires interpretation of the collective bargaining agreement's terms, and (2) whether the right claimed by Plaintiff is created by the collective bargaining agreement. *See DeCoe v. General Motors Corp.,* 32 F.3d 212, 216 (6th Cir. 1994). "If a state-law claim fails *either* of these two requirements, it is preempted by § 301." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004). Under this standard, preemption is even required in cases where "resolution of [the plaintiff's] claim will not involve the direct interpretation of a precise term of the CBA, but … will require a court to address relationships that have been created through the collective bargaining process and to mediate a dispute founded upon rights created by a CBA." *DeCoe*, 32 F.3d at 218 (quoting *Jones v. General Motors Corp.,* 939 F.2d 380 (6th Cir. 1991).

On the other hand, the duty of a Union to furnish fair representation arises under Section 9(a) of the LMRA. "This duty does not depend on the existence of a collective bargaining agreement. Rather, 'it flows from the union's statutory position as exclusive representative and exists both before and after the execution of an agreement.'" *Pratt v. United Auto., Aerospace &*

*Agric. Implement Workers of Am.*, 939 F.2d 385, 388 (6th Cir. 1991) (citing *Storey v. Local* 327, 759 F.2d 517, 523 (6th Cir. 1985)). Such a claim requires inquiry into whether the state law claim alleges conduct that is within the scope of the union's duty of fair representation, i.e., its duty "to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." *Vaca v. Sipes*, 386 U.S. 171, 177 (1967); *see also Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1158 (10th Cir. 2000) (stating that "[w]here a plaintiff's allegations fall within the scope of the duty of fair representation, federal labor law governs and ordinarily preempts any state-law claims based on those allegations"); *BIW Deceived v. Local S6, Indus. Union of Marine & Shipbuilding Workers*, 132 F.3d 824, 831-32 (1st Cir.1997) (holding that "state law is preempted whenever a plaintiff's claim invokes rights derived from a union's duty of fair representation").

In *Maynard v. Revere Copper Products, Inc.*, the Sixth Circuit specifically addressed the scope of preemption in the context of duty of fair representation claims as follows:

> The doctrine of preemption is firmly established in labor law. The duty of fair representation relates to an area of labor law which has been so fully occupied by Congress as to foreclose state regulation. Whether union conduct constitutes a breach of the duty of fair representation is a question of federal law. *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 299 (1971). The fact that an action for failure to fairly represent a member may be brought in a state court, *see Humphrey v. Moore*, 375 U.S. 335 (1964), is beside the point. Regardless of the forum in which the claim is presented, the case is controlled by federal law. *Id.* at 343-44.

*Maynard v. Revere Copper Products, Inc.,* 773 F.2d 733 (6th Cir. 1985) (holding that a plaintiff's claim that a union failed to adequately represent him because of his disability in violation of M.C.L. 37.2204 was preempted by the union's federal duty of fair representation).

The duty of fair representation "applies in all contexts of union activity, including contract negotiation, administration, enforcement, and grievance processing." *Merritt v. Int'l Ass'n of Machinists & Aerospace Workers*, 613 F.3d 609, 619 (6th Cir. 2010). A plaintiff alleging a breach of the duty of fair representation must show that the union's actions were "arbitrary, discriminatory, or in bad faith." *Id.* To demonstrate that a union engaged in discrimination, a plaintiff must "adduce substantial evidence of discrimination that is intentional, severe, and unrelated to legitimate union objectives." *Amalgamated Ass'n v. Lockridge*, 403 U.S. 274, 301 (1971). Finally, "[a] union acts in bad faith when it acts with an improper intent, purpose, or motive encompassing fraud, dishonesty, and other intentionally misleading conduct." *Merritt*, 613 F.3d at 619 (internal quotations sand alterations omitted).

Plaintiff specifically alleges that he was not adequately represented by the Union because of his race and his previous complaints. These allegations principally raise questions about the Union's performance of its duty of fair representation.[3] While there is currently no Section 301 claim pending against Plaintiff's employer under the CBA, the Supreme Court has explained that a claim against a union for breach of the duty of fair representation does not require a concomitant claim against an employer for breach of a CBA. *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67, 79 (1989).

**i.**

Plaintiff argues that his claims against the Union are based upon his independent civil rights and do not fall within the Union's duty to represent him. Plaintiff's race discrimination claim against Defendant Union arises under M.C.L. 37.2204, which holds that a labor organization shall not:

---

[3] Because this case is governed by the duty of fair representation and not Section 301, Plaintiff's argument that Defendant Union has provided the Court with an incorrect version of the CBA is irrelevant at this time.

(a) Exclude or expel from membership, or otherwise discriminate against, a member or applicant for membership because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(b) Limit, segregate, or classify membership or applicants for membership, or classify or fail or refuse to refer for employment an individual in a way which would deprive or tend to deprive that individual of an employment opportunity, or which would limit an employment opportunity, or which would adversely affect wages, hours, or employment conditions, or otherwise adversely affect the status of an employee or an applicant for employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

(c) Cause or attempt to cause an employer to violate this article.

(d) Fail to fairly and adequately represent a member in a grievance process because of religion, race, color, national origin, age, sex, height, weight, or marital status.

*Id*. Plaintiff specifically alleges that the Union impermissibly discriminated against him because of his race by "failing to adequately represent him, refusing to file complaints on Plaintiff's behalf, failing to negotiate Plaintiff's return to work … and other actions set forth above."

Plaintiff principally relies on a non-binding, unpublished case decided in this district, *Bredesen v. Detroit Federation of Musicians, Local No. 5,* 165 F. Supp. 2d 647 (E. D. Mich. 2001) in support of his argument that his state law claims are not preempted. In *Bredesden* the plaintiff, a female employed as a "house contractor" for the Detroit Opera House, alleged that her union representatives had negotiated higher rates of pay for her male counterparts than it had negotiated on her behalf, and misrepresented her applicable pay scale. *Id*. at 649-50. The plaintiff also alleged that union representatives threatened and retaliated against her after she did not consult them prior to making hiring decisions. *Id*. at 651. The plaintiff's complaint asserted a claim that the union had breached the duty of fair representation in violation of the LMRA and a pendent ELCRA sex discrimination claim. In finding that the ELCRA claim was not preempted,

the court determined that the plaintiff's ELCRA claim asserted rights independent of the relevant labor contract. *Bredesden* is not persuasive.

Plaintiff's assertion that the Union did not adequately represent him, did not adequately file complaints on his behalf, and did not adequately negotiate on his behalf – his burden under ELCRA based on the framing of his claim – necessarily implicates the Union's duty of fair representation. An argument to the contrary defies logic, and certainly flirts with the Plaintiff's duty under Federal Rule of Civil Procedure 11(b).

As explained by the Sixth Circuit in addressing the same statute at issue in this case, "[t]his kind of claim, a failure to represent *fairly*, is essentially a matter of federal law, an area of labor law which has been so fully occupied by Congress as to foreclose or to preempt state regulation." *Jones v. Truck Drivers Local Union No. 299*, 838 F.2d 856, 861 (6th Cir. 1988) (finding the plaintiffs' claim of sex discrimination brought pursuant to M.C.L. 37.2204 completely preempted) (citation omitted). *See also Maynard,* 773 F.2d 733 (holding that a plaintiff's claim that a union failed to adequately represent him because of his disability in violation of M.C.L. 37.2204 was preempted by the union's federal duty of fair representation). Federal law therefore applies to Plaintiff's claim that the Union failed to adequately represent him due to his race.

**ii.**

In his second claim against the Union, Plaintiff alleges that the Union unlawfully retaliated against him for opposing the Union's violations of the Act. While the ELCRA provision at issue is not identified in Plaintiff's complaint, he appears to raise his claim under MCL 37.201(a). That provision prohibits retaliation or discrimination "against a person because the person has opposed a violation of this act, or because the person has made a charge, filed a

complaint, testified, assisted, or participated in an investigation, proceeding, or hearing under [ELCRA]."

Plaintiff argues that because he challenged the Union's inadequate representation of him and pursuit of claims on his behalf because of his race, the Union retaliated by failing to adequately negotiate with Defendant Nexteer on his behalf regarding the termination decision. In essence, Plaintiff's assertion is that the Union failed to fairly and adequately represent him in retaliation for his claims against the Union for engaging in race discrimination. To prevail on such a claim, Plaintiff would be required to prove that the Union did not adequately negotiate a return to work because of Plaintiff's complaints of race discrimination: In essence, an argument that the Union discriminated against him and acted in bad faith. This falls squarely within the Union's duty of fair representation, and is therefore preempted.

**B.**

Having determined that Federal Law applies to each of Plaintiff's claims against the Union, the next issue is whether Plaintiff's claims should be dismissed for his failure to exhaust his internal Union remedies. A plaintiff alleging a breach of the duty of fair representation "is not required to exhaust remedies under the collective bargaining agreement because no breach [is] alleged." *Pratt*, 939 F.2d 385 at 390. However, a plaintiff still may be required to exhaust intra-union remedies before bringing a federal lawsuit. *Id.* Whether such exhaustion is required is a matter of district court discretion. *Id*.

> In exercising this discretion, at least three factors should be relevant: first, whether union officials are so hostile to the employee that he could not hope to obtain a fair hearing on his claim; second, whether the internal union appeals procedure would be inadequate either to reactivate the employee's grievance or to award him the full relief he seeks … ; and third, whether exhaustion of internal procedures would unreasonably delay the employee's opportunity to obtain a judicial hearing on the merits of his claim. If any of these factors are found to exist, the court may properly excuse the employee's failure to exhaust.

*Id.* (quoting *Clayton v. Automobile Workers*, 451 U.S. 679, 681 (1981).

Plaintiff concedes that he did not exhaust his internal intra-union remedies, as established by the UAW constitution. Plaintiff's complaint does not allege that UAW was hostile to him, that the internal appeals procedure would be inadequate, or that exhaustion would unreasonably delay his opportunity to seek judicial relief. As such, Plaintiff fails to state a claim against Defendant Local 699.[4]

### III.

Accordingly, it is **ORDERED** that Defendant Local 699's motion to dismiss, ECF No. 6, is **GRANTED**.

It is further **ORDERED** that Counts Five and Six of Plaintiff's complaint, ECF No. 1, are **DISMISSED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: January 20, 2017

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on January 20, 2017.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager

---

[4] In his responsive motion Plaintiff seeks permission to amend his complaint. This argument will be disregarded, as this Court's practice guidelines clearly state that "[m]otions may not be included within or appended to a response or reply, and under no circumstances may a motion be included within the text or footnotes of another motion."